IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DUNKIN' DONUTS FRANCHISING, LLC, | ) |
| | ) |
| | ) |
| and | ) |
| | ) |
| DD IP HOLDER, LLC, | ) |
| | ) |
| and | ) |
| | ) |
| DB REAL ESTATE ASSETS I, LLC, | ) |
| | ) |
| and | ) |
| | ) |
| DB REAL ESTATE ASSETS II, LLC, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| HUNAR ENTERPRISES, LLC, | ) Civil Action No. _____ |
| **SERVE:** Sundeep Makhani | ) |
| Registered Agent | ) |
| 2469 Autumn Mist Drive | ) |
| Winston-Salem, NC  27103-5543 | ) |
| | ) |
| and | ) |
| | ) |
| HUNAR ENTERPRISES HAWTHORNE, LLC, | ) |
| **SERVE:** Sundeep Makhani | ) |
| Registered Agent | ) |
| 2469 Autumn Mist Drive | ) |
| Winston-Salem, NC  27103-5543 | ) |
| | ) |
| and | ) |
| | ) |
| HUNAR ENTERPRISES WILKESBORO, LLC, | ) |
| **SERVE:** Sundeep Makhani | ) |
| Registered Agent | ) |
| 2469 Autumn Mist Drive | ) |
| Winston-Salem, NC  27103-5543 | ) |
| | ) |
| and | ) |
| | ) |

HUNAR ENTERPRISES ADVANCE, LLC,    )
**SERVE:**      Sundeep Makhani    )
                Registered Agent    )
                2469 Autumn Mist Drive    )
                Winston-Salem, NC  27103-5543    )
                    )
and    )
                    )
HUNAR FOODS, LLC,    )
**SERVE:**      Sundeep Makhani    )
                Registered Agent    )
                2469 Autumn Mist Drive    )
                Winston-Salem, NC  27103-5543    )
                    )
and    )
                    )
SUNDEEP MAKHANI,    )
2469 Autumn Mist Drive    )
Winston-Salem, NC  27103-5543    )
                    )
and    )
                    )
AJINDER S. MAKHANI,    )
2469 Autumn Mist Drive    )
Winston-Salem, NC  27103-5543    )
                    )
and    )
                    )
SANTOSH MAKHANI,    )
2469 Autumn Mist Drive    )
Winston-Salem, NC  27103-5543    )
                    )
and    )
                    )
MANPREET K. MAKHANI,    )
2469 Autumn Mist Drive    )
Winston-Salem, NC  27103-5543    )
                    )
and    )
                    )
NAVNEET S. MAKHANI,    )
2469 Autumn Mist Drive    )
Winston-Salem, NC  27103-5543    )
                    )
           Defendants.    )

# COMPLAINT

Plaintiffs, Dunkin' Donuts Franchising, LLC ("DDF"), DD IP Holding, LLC ("DD IP"), DB Real Estate Assets I, LLC (DB RE I") and DB Real Estate Assets II, LLC ("DB RE II"), for their Complaint against Defendants, Hunar Enterprises, LLC ("Hunar'), Hunar Enterprises Hawthorne, LLC ("Hunar Hawthorne"), Hunar Enterprises Wilkesboro, LLC ("Hunar Wilkesboro"), Hunar Enterprises Advance, LLC ("Hunar Advance"), Hunar Foods, LLC ("Hunar Foods"), Sundeep Makhani ("Sundeep"), Ajinder S. Makhani ("Ajinder"), Santosh Makhani ("Santosh"), Manpreet K. Makhani ("Manpreet") and Navneet S. Makhani ("Navneet"), say as follows:

## PARTIES, JURISDICTION AND VENUE

1.      Plaintiff DDF, DD IP DB RE I and DB RE II are duly formed Delaware limited liability companies and indirect, wholly-owned subsidiaries of Dunkin' Brands, Inc., with principal offices at 130 Royall Street, Canton, Massachusetts.

2.      The defendants are related entities and persons who operate a five store network of Dunkin' Donuts franchised businesses, four of which are in the Winston-Salem, NC area, and the fifth, in Wilkesboro, NC.

3.      Hunar is a North Carolina limited liability company whose registered office address is 2469 Autumn Mist Drive, Winston-Salem, NC.

4.      Hunar Hawthorne is a North Carolina limited liability company whose registered office is located at 2469 Autumn Mist Drive, Winston-Salem, NC.

5.      Hunar Wilkesboro is a North Carolina limited liability company whose registered office is located at 2469 Autumn Mist Drive, Winston-Salem, NC.

3

6.      Hunar Advance is a North Carolina limited liability company whose registered office is located at 2469 Autumn Mist Drive, Winston-Salem, NC.

7.      Hunar Foods is a North Carolina limited liability company whose registered office is located at 2469 Autumn Mist Drive, Winston-Salem, NC.

8.      Sundeep is a member of each of the limited liability company defendants and is registered agent for each company.  On information and belief, Sundeep resides at 2469 Autumn Mist Drive, Winston-Salem, NC.

9.      Ajinder is a member of each of the limited liability company defendants and, on information and belief, resides at 2469 autumn Mist Drive, Winston-Salem, NC.

10.      Santosh is a member of Hunar Wilkesboro, Hunar Advance, Hunar Foods and perhaps the other two limited liability company defendants.  On information and belief, Santosh resides at 2469 Autumn Mist Drive, Winston-Salem, NC.

11.      Manpreet is a member of Hunar Foods, Hunar Advance and perhaps the other limited liability company defendants.  On information and belief, Manpreet resides at 2469 Autumn Mist Drive, Winston-Salem, NC.

12.      Navneet may be a member of one or more of the limited liability company defendants.  On information and belief, Navneet resides at 2469 Autumn Mist Drive, Winston-Salem, NC.

13.      This dispute arises under the Lanham Act, 15 U.S.C. Section 1051, et seq. Accordingly, jurisdiction of the Court over this action is conferred by 28 U.S.C. §1331 and § 1338.  The Court also has diversity jurisdiction of this action under 28 U.S.C. § 1332(a) because there is complete diversity between plaintiffs and defendants and the matter in

4

controversy exceeds $75,000, exclusive of interest and costs. In addition, this Court has pendent jurisdiction over the non-federal claims of DDF, DB RE I and DB RE II.

14.     Venue lies in this district pursuant to 28 U.S.C. § 1391(b) because this action is not founded solely on diversity of citizenship; a substantial part of the events or omissions giving rise to the claims recited herein occurred in this district; and all but one of the properties that are the subject of this action, the Dunkin' Donuts units, are situated in this district.

## DUNKIN' DONUTS' BUSINESS, TRADEMARKS, SERVICE MARKS AND TRADE DRESS

15.     As the result of an expenditure of time, effort and money, DDF and DD IP have acquired experience and skill in the development, opening and operating of shops and distribution outlets for production, merchandising and sale of doughnuts and other food and drink products utilizing proprietary and confidential recipes and preparation methods, a specially designed building or facility with specially developed equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standard distribution and delivery methods, specifications and proprietary marks and information (hereinafter the "Dunkin' Donuts System").

16.     DDF and DD IP have developed and used, and continue to use and control the usage of, certain proprietary interests, trademarks, service marks and trade names, including DUNKIN' DONUTS, which is registered as a trademark on the Principal Register of the United States Patent Office, to identify for the public the source of goods and services marketed thereunder and to represent to the public high and uniform standards of quality, cleanliness, appearance and service (hereinafter the "Dunkin' Donuts Marks"). Primarily applicable to this action are the following: Registration No. 692,491 for trademark "DUNKIN' DONUTS" (script)" registered February 2, 1960, noting continuous use of the mark since May, 1952; Registration

5

No. 748901 registered on April 30, 1963, for the service mark "DUNKIN' DONUTS"; and

Registration No. 1,148,165 registered March 3, 1981 for service mark "DUNKIN' DONUTS

(colored mark)". DD IP is the record owner of the Dunkin' Donuts Marks and DD IP licenses

DDF to license the Dunkin' Donuts Marks to franchisees of the Dunkin' Donuts System for use

in franchise operation of Dunkin' Donuts shops.

17.     Dunkin' Donuts shops worldwide present a uniform appearance that is instantly

recognized. This appearance is Dunkin' Donuts's trade dress or commercial image and embodies

Dunkin' Donuts's reputation for quality. The trade dress includes the following items: shape and

general appearance of the exterior; identifying sign; interior floor plan and layout; appointments,

interior furniture and decor items; display cases; servers' uniforms; color scheme; and menu and

menu items. The Dunkin' Donuts trade dress creates a unique and arbitrary visual impression

and is inherently distinctive.

### AGREEMENTS WITH DEFENDANTS FOR OPERATION OF FIVE DUNKIN' DONUTS STORES

#### A.     The Wilkesboro Store

18.     On or about February 16, 2009, DDF, as franchisor, entered into a Franchise

Agreement (the "Wilkesboro Franchise Agreement") with Hunar Wilkesboro, as franchisee, for

operation of a Dunkin' Donuts franchised business at 1801 W. Highway 421 (Walmart),

Wilkesboro, NC (the "Wilkesboro Store"). In exchange for the right to use the Dunkin' Donuts

Marks and the Dunkin' Donuts System at the Wilkesboro Store, and for other valuable

consideration recited in the Wilkesboro Franchise Agreement, Hunar Wilkesboro, among other

things, contracted to report to DDF weekly its gross sales for the Wilkesboro Store and to pay

DDF each week franchise and advertising fees calculated as a percentage of gross sales made at

the Wilkesboro Store.

6

19.     As part of the Wilkesboro Franchise Agreement, Sundeep and Ajinder executed a Personal Guarantee of the obligations of Hunar Wilkesboro to DDF under the Wilkesboro Franchise Agreement.

20.     Also, on February 16, 2009, DB RE I, as sublessor, and Hunar Wilkesboro, as sublessee, executed a Sublease for the Wilkesboro Store premises (the "Wilkesboro Sublease"). As part of the Wilkesboro Sublease, Sundeep and Ajinder executed a Guarantee of the obligations of Hunar Wilkesboro to DB RE I under the Wilkesboro Sublease.

B.     The Mocksville Store

21.     On or about June 1, 2009, DDF, as franchisor, entered into a Franchise Agreement (the "Mocksville Franchise Agreement") with Hunar, as franchisee, for operation of a Dunkin' Donuts franchised business at 1636 Yadkinville Road, Mocksville, NC (the "Mocksville Store"). In exchange for the right to use the Dunkin' Donuts Marks and the Dunkin' Donuts System at the Mocksville Store, and for other valuable consideration recited in the Mocksville Franchise Agreement, Hunar, among other things, contracted to report to DDF weekly its gross sales for the Mocksville Store and to pay DDF each week franchise and advertising fees calculated as a percentage of gross sales made at the Mocksville Store.

22.     As part of the Mocksville Franchise Agreement, Sundeep, Ajinder, Manpreet, Santosh and Navneet executed a Personal Guarantee of the obligations of Hunar to DDF under the Mocksville Franchise Agreement.

C.     The Clemmons Store

23.     On or about July 21, 2010, DDF, as franchisor, entered into a Franchise Agreement (the "Clemmons Franchise Agreement") with Hunar Advance, as franchisee, for operation of a Dunkin' Donuts franchised business at 2385 Lewisville-Clemmons Road,

7

Clemmons, NC (the "Clemmons Store"). In exchange for the right to use the Dunkin' Donuts Marks and the Dunkin' Donuts System at the Clemmons Store, and for other valuable consideration recited in the Clemmons Franchise Agreement, Hunar Advance, among other things, contracted to report to DDF weekly its gross sales for the Clemmons Store and to pay DDF each week franchise and advertising fees calculated as a percentage of gross sales made at the Clemmons Store.

24.     As part of the Clemmons Franchise Agreement, Sundeep, Ajinder, Manpreet, Santosh and Navneet executed a Personal Guarantee of the obligations of Hunar Advance to DDF under the Clemmons Franchise Agreement.

### D.     The Robinhood Road Store

25.     On or about February 14, 2011, DDF, as franchisor, entered into a Franchise Agreement (the "Robinhood Road Franchise Agreement") with Hunar Foods, as franchisee, for operation of a Dunkin' Donuts franchised business at 3475 Robinhood Road, Winston-Salem, NC (the "Robinhood Road Store"). In exchange for the right to use the Dunkin' Donuts Marks and the Dunkin' Donuts System at the Robinhood Road Store, and for other valuable consideration recited in the Robinhood Road Franchise Agreement, Hunar Foods, among other things, contracted to report to DDF weekly its gross sales for the Robinhood Road Store and to pay DDF each week franchise and advertising fees calculated as a percentage of gross sales made at the Robinhood Road Store

26.     As part of the Robinhood Road Franchise Agreement, Sundeep, Ajinder, Santosh, Navneet and Manpreet executed a Personal Guarantee of the obligations of Hunar Foods to DDF under the Robinhood Road Franchise Agreement.

8

E.    The Hawthorne Road Store

27.    On or about July 1, 2013, DDF, as franchisor, entered into a Franchise Agreement (the "Hawthorne Road Franchise Agreement") with Hunar Hawthorne, as franchisee, for operation of a Dunkin' Donuts franchised business at 2020 S. Hawthorne Road, Winston-Salem, NC (the "Hawthorne Road Store"). In exchange for the right to use the Dunkin' Donuts Marks and the Dunkin' Donuts System at the Hawthorne Road Store, and for other valuable consideration recited in the Hawthorne Road Franchise Agreement, Hunar Hawthorne, among other things, contracted to report to DDF weekly its gross sales for the Hawthorne Road Store and to pay DDF each week franchise and advertising fees calculated as a percentage of gross sales made at the Hawthorne Road Store.

28.    As part of the Hawthorne Road Franchise Agreement, Sundeep and Ajinder executed a Personal Guarantee of the obligations of Hunar Hawthorne to DDF under the Hawthorne Road Franchise Agreement.

29.    On or about July 1, 2013, DB RE II, as sublessor, and Hunar Hawthorne, as Sublessee, entered into a Sublease for the Hawthorne Road Store premises (the "Hawthorne Road Sublease"). As part of the Hawthorne Road Sublease, Sundeep and Ajinder executed a Guarantee of the obligations of Hunar Hawthorne to DB RE II under the Hawthorne Road Sublease.

DEFAULTS AND TERMINATION OF FRANCHISE AGREEMENTS AND SUBLEASES

A.    Wilkesboro Franchise Agreement and Wilkesboro Sublease

30.    Hunar Wilkesboro defaulted on its obligations to DDF under the Wilkesboro Franchise Agreement by failing to report sales and pay, when due, weekly franchise fees, advertising fees, interest and other fees.

9

31.     On February 3, 2015, DDF, by counsel, pursuant to Section 9 of the Wilkesboro Franchise Agreement, sent to Hunar Wilkesboro a written Notice to Cure defaults under the Wilkesboro Franchise Agreement. Hunar Wilkesboro received the Notice to Cure on February 4, 2015. The Wilkesboro Franchise Agreement provides that the noticed defaults must be cured within seven days of receipt of a Notice to Cure, and that if defaults are not cured within the requisite time, DDF, may, among other things, elect to terminate the Wilkesboro Franchise Agreement.

32.     Following receipt of the Notice to Cure recited in paragraph 31 above, Hunar Wilkesboro failed, and continues to fail, to cure its defaults under the Wilkesboro Franchise Agreement.

33.     Accordingly, on March 11, 2015, in compliance with Section 9 of the Wilkesboro Franchise Agreement, DDF, by counsel, sent to Hunar Wilkesboro a Notice of Termination of the Wilkesboro Franchise Agreement, effective immediately. Hunar Wilkesboro received the Notice of Termination on March 12, 2015.

34.     Hunar Wilkesboro also defaulted on its financial obligations to DB RE I under the Wilkesboro Sublease.

35.     On February 3, 2015, DB RE I, by counsel, sent to Hunar Wilkesboro a written Notice to Cure defaults under the Wilkesboro Sublease. The Notice to Cure was delivered to Hunar Wilkesboro on February 4, 2015.

36.     Following Receipt of the Notice to Cure, Hunar Wilkesboro failed to cure its default under the Wilkesboro Sublease.

10

37.     Therefore, on March 11, 2015, pursuant to paragraph 9.2 of the Wilkesboro Sublease, DB RE I, by counsel, sent to Hunar Wilkesboro a Notice of Termination of the Wilkesboro Sublease and demand for possession and payment.

38.     Hunar Wilkesboro has ignored the Notices, continues to occupy the Wilkesboro Store premises and fails to pay any sums due for rent and other charges.

39.     In like manner, Sundeep and Ajinder have failed to pay sums due to DDF and DB RE I, respectively, under the Wilkesboro Franchise Agreement and Wilkesboro Sublease as provided in their respective personal guaranties.

B.      Mocksville Franchise Agreement

40.     Hunar defaulted on its obligations to DDF under the Mocksville Franchise Agreement by failing to report gross sales and failing to pay, when due, weekly franchise fees, advertising fees, interest and other fees.

41.     On February 3, 2015, DDF, by counsel, pursuant to Section 9 of the Mocksville Franchise Agreement, sent to Hunar a written Notice to Cure defaults under the Mocksville Franchise Agreement. Hunar received the Notice to Cure on February 4, 2015. The Mocksville Franchise Agreement provides that the noticed defaults must be cured within seven days of receipt of a Notice to Cure, and that if defaults are not cured within the requisite time, DDF, may, among other things, elect to terminate the Mocksville Franchise Agreement.

42.     Following receipt of the Notice to Cure recited in paragraph 41 above, Hunar failed, and continues to fail, to cure its defaults under the Mocksville Franchise Agreement.

43.     Accordingly, on March 11, 2015, in compliance with Section 9 of the Mocksville Franchise Agreement, DDF, by counsel, sent to Hunar a written Notice of Termination of the

11

Mocksville Franchise Agreement, effective immediately. Hunar received the Notice of Termination on March 12, 2015.

44.     Sundeep, Ajinder, Santosh, Manpreet and Navneet have also failed to cure the defaults of Hunar under the Mocksville Franchise Agreement as they are obligated to do under their Personal Guarantee.

C.     Clemmons Franchise Agreement

45.     Hunar Advance defaulted on its obligations to DDF under the Clemmons Franchise Agreement by failing to report gross sales and failing to pay, when due, weekly franchise fees, advertising fees, interest and other fees.

46.     On February 3, 2015, DDF, by counsel, pursuant to Section 9 of the Clemmons Franchise Agreement, sent to Hunar Advance a written Notice to Cure defaults under the Clemmons Franchise Agreement. Hunar Advance received the Notice to Cure on February 4, 2015. The Clemmons Franchise Agreement provides that the noticed defaults must be cured within seven days of receipt of a Notice to Cure, and that if defaults are not cured within the requisite time, DDF, may, among other things, elect to terminate the Clemmons Franchise Agreement.

47.     Following receipt of the Notice to Cure recited in paragraph 46 above, Hunar Advance failed, and continues to fail, to cure its defaults under the Clemmons Franchise Agreement.

48.     Accordingly on March 11, 2015, in compliance with Section 9 of the Clemmons Franchise Agreement, DDF, by counsel, sent to Hunar Advance a written Notice of Termination of the Clemmons Franchise Agreement, effective immediately. The Notice of Termination was delivered to Hunar Advance on March 12, 2015.

12

49.     Sundeep, Ajinder, Santosh, Manpreet and Navneet failed to cure the defaults of Hunar Advance under the Clemmons Franchise Agreement as required by their Personal Guarantee.

D.      Robinhood Road Franchise Agreement

50.     Hunar Foods defaulted on its obligations to DDF under the Robinhood Road Franchise Agreement by failing to report gross sales and failing to pay, when due, weekly franchise fees, advertising fees, interest and other fees.

51.     On February 3, 2015, DDF, by counsel, pursuant to Section 9 of the Robinhood Road Franchise Agreement, sent to Hunar Foods a written Notice to Cure defaults under the Robinhood Road Franchise Agreement.  Hunar Foods received the Notice to Cure on February 4, 2015.  The Robinhood Road Franchise Agreement provides that the noticed defaults must be cured within seven days of receipt of a Notice to Cure, and that if defaults are not cured within the requisite time, DDF, may, among other things, elect to terminate the Robinhood Road Franchise Agreement.

52.     Following receipt of the Notice to Cure recited in paragraph 51 above, Hunar Foods failed, and continues to fail, to cure its defaults under the Robinhood Road Franchise Agreement.

53.     Accordingly, on March 11, 2015, in compliance with Section 9 of the Robinhood Road Franchise Agreement, DDF, by counsel, sent to Hunar Foods a Notice of Termination of the Robinhood Road Franchise Agreement, effective immediately.  Hunar Foods received the Notice of Termination on March 12, 2015.

13

54.     Sundeep, Ajinder, Santosh, Manpreet and Navneet failed to cure the defaults of Hunar Foods under the Robinhood Road Franchise Agreement as required by their Personal Guarantee.

        E.      Hawthorne Road Franchise Agreement and Hawthorne Road Sublease

55.     Hunar Hawthorne defaulted on its obligations to DDF under the Hawthorne Road Franchise Agreement by failing to report sales and pay, when due, weekly franchise fees, advertising fees, interest and other fees.

56.     On February 3, 2015, DDF, by counsel, pursuant to Section 9 of the Hawthorne Road Franchise Agreement, sent to Hunar Hawthorne a written Notice to Cure defaults under the Hawthorne Road Franchise Agreement. Hunar Hawthorne received the Notice to Cure on February 4, 2015. The Hawthorne Road Franchise Agreement provides that the noticed defaults must be cured within seven days of receipt of a Notice to Cure, and that if defaults are not cured within the requisite time, DDF, may, among other things, elect to terminate the Hawthorne Road Franchise Agreement.

57.     Following receipt of the Notice to Cure recited in paragraph 56 above, Hunar Hawthorne failed, and continues to fail, to cure its defaults under the Hawthorne Road Franchise Agreement.

58.     Accordingly, on March 11, 2015, in compliance with Section 9 of the Hawthorne Road Franchise Agreement, DDF, by counsel, sent to Hunar Hawthorne a Notice of Termination of the Hawthorne Road Franchise Agreement. Hunar Hawthorne received the Notice of Termination on March 12, 2015.

59.     Sundeep and Ajinder failed to cure the defaults of Hunar Hawthorne under the Hawthorne Road Franchise Agreement, as required by their Personal Guarantee.

14

60.     Hunar Hawthorne also defaulted on its payment obligations to DB RE II under the Hawthorne Road Sublease.

61.     On February 3, 2015, DB RE II, by counsel, sent to Hunar Hawthorne a written Notice to Cure defaults under the Hawthorne Road Sublease. The Notice to Cure was delivered to Hunar Hawthorne on February 4, 2015.

62.     Following Receipt of the Notice to Cure, Hunar Hawthorne failed to cure its defaults under the Hawthorne Road Sublease.

63.     Therefore, on March 11, 2015, DB RE II, by counsel, sent to Hunar Hawthorne a written Notice of Termination of the Hawthorne Road Sublease, demanding possession and payment.

## POST-TERMINATION OBLIGATIONS

64.     In Section 9 of each Franchise Agreement, DDF and applicable franchisee Defendants agreed that upon termination of the respective Franchise Agreements, "all right of [franchisee] to use the Proprietary Marks and the System(s) and to operate the Unit under the Proprietary Marks shall terminate." Each franchisee Defendant further agreed to the following post-termination obligations:

(a)     to . . . "promptly pay [DDF,] all sums owing or accrued from [franchisee] to [DDF], including interest and any damages, costs and expenses, including reasonable attorney's fees, incurred by [DDF] by reason of default on the part of [franchisee]"; and

(b)     to . . . "immediately and permanently cease to operate the [five businesses] and shall not thereafter, directly or indirectly, represent to the public or hold itself out as a present or former FRANCHISEE of [DDF]"; and

(c)     to . . . "immediately and permanently cease to use, by advertising or in any other manner whatsoever, any feature or method associated with the System(s), any or all of the Proprietary Marks and any other trade secrets, confidential information, operating manuals, slogans, trade dress, signs, symbols or devices which are part of [DDF] System(s) or are otherwise

15

used in connection with the operation of [any of the identified stores]"; and

(d)    to . . . "immediately return to [DDF] all operating manuals, plans, specifications, and other materials in [Franchisee's] possession containing information prepared by [DDF] and relative to the operation of the [respective stores], and all copies thereof (all of which are acknowledged to be [DDF's] property), and shall retain no copy or record of any of the foregoing, except [Franchisee's] copy of this Agreement, any correspondence between the parties, and any other documents which [Franchisee] reasonably needs for compliance with any provision of law"; and

(e)    to . . . "remove from the Premises and from any equipment, signs, trade fixtures, furnishings and other personal property (except as provided in paragraph 9.4.6 below) and return to [DDF] all of the Proprietary Marks or other indicia of [DDF], and shall disconnect, withdraw and/or terminate, within five (5) days after termination or expiration of this Agreement, any telephone listings and/or fictitious name registration containing any part of the Proprietary Marks . . . [Franchisee] hereby appoints [DDF] as its attorney-in-fact, in the name of [Franchisee], to do any act necessary to effect the intent of this paragraph.

65.    In the each Franchise Agreement, the applicable franchisee Defendant agreed to pay all reasonable attorney's fees and costs incurred by Dunkin' Donuts in enforcing termination and collecting amounts due.

66.    Each franchisee Defendant failed to comply with its post-termination obligations under its respective Franchise Agreement as follows:

(a)    each failed to pay DDF sums due, plus interest on such sums and attorney's fees and costs incurred to date;

(b)    each continued, and still continues, to display the Dunkin' Donuts Marks and use the Dunkin' Donuts System to operate a Dunkin' Donuts business;

(c)    each failed to return to DDF operating manuals and other materials pertaining to store operation; and

(d)    each has failed to de-identify its store premises.

16

67.     Hunar Wilkesboro and Hunar Hawthorne have failed to deliver possession of the Wilkesboro Store and Hawthorne Road Store premises to DB RE I and DB Re II, respectively, and to pay sums due under the Wilkesboro Sublease and Hawthorne Road Sublease.

68.     As a result of the defaults of all of the Defendants under their respective Franchise Agreements and Subleases, DDF, DD IP , DB RE I and DB RE II have found it necessary to employ counsel to enforce their rights and remedies.  Under each Franchise Agreement and Sublease, the applicable Defendants are liable for all reasonable attorney's fees and costs incurred and to be incurred by Plaintiffs herein.

COUNT I<br>(Trademark Infringement)

69.     DD IP and DDF incorporate here paragraphs 1 – 68 above.

70.     Much of DDF's income is derived from the operation of Dunkin' Donuts retail businesses by franchisees using the Dunkin' Donuts Marks and the Dunkin' Donuts System.

71.     Since lawful termination of the five Franchise Agreements, Hunar Wilkesboro, Hunar, Hunar Advance, Hunar Foods and Hunar Hawthorne have used and displayed the Dunkin' Donuts Marks and trade dress and used the Dunkin' Donuts System at their respective stores without the consent, permission, or authority of Dunkin' Donuts.  Indeed, such use and display has been contrary to the express objection of DD IP and DDF.  The five franchisee defendants are obligated to de-identify promptly their respective stores by removing all Dunkin' Donuts Marks.

72.     In each Franchise Agreement, the franchisee Defendants agreed that following termination of their respective Franchise Agreement by DDF

> . . . any such unauthorized use or continued use after the termination of this Agreement shall constitute irreparable harm.  Continued use by FRANCHISEE of FRANCHISOR'S trademarks, trade names,

17

> Proprietary Marks, and service marks after termination of this
> Agreement shall constitute irreparable harm. Continued use by
> FRANCHISEE of FRANCHISOR'S trademarks, trade names,
> Proprietary Marks, and service marks after termination of this
> Agreement shall constitute willful trademark infringement by
> FRANCHISEE.

73.     Each franchisee Defendant is intentionally using and displaying the Dunkin'
Donuts Marks and trade dress with the knowledge that such use unlawfully infringes upon the
Dunkin' Donuts Marks.

74.     The unlawful activity of the franchisee Defendants results in irreparable harm and
injury to DD IP and DDF in that, among other things, it deprives DD IP and DDF of their
absolute right to determine the manner in which the Dunkin' Donuts image, trademarks, service
marks and trade dress are presented to the public; deceives and confuses the public as to the
authorized sponsorship of each Dunkin' Donuts Store; wrongfully trades upon the reputation,
commercial value, and exclusive right of DD IP and DDF in Dunkin' Donuts trademarks, service
marks, and trade dress; and irreparably harms and injures the reputation of DD IP and DDF for
providing high quality goods and services.

75.     The unauthorized and uncontrolled use of the Dunkin' Donuts Marks and trade
dress by each franchisee Defendant violates the rights of DD IP and DDF under 15 U.S.C.
§ 1114 and § 1125, and such use has damaged, and will continue to damage, DD IP and DDF
and their valuable Marks, causing irreparable harm for which there is no adequate remedy at law,
and has injured the unsuspecting public. Such unlawful acts and damage will continue to occur
unless enjoined by this Court.

76.     DD IP and DDF have no adequate remedy at law, and if the unauthorized and
uncontrolled acts of the franchisee Defendants are not enjoined, DDI and DDF will continue to

18

suffer further irreparable harm to the Dunkin' Donuts Marks, trade dress, goodwill, and business reputation as a result thereof.

### COUNT II (Hunar Wilkesboro, Sundeep and Ajinder)
#### (Breach of the Wilkesboro Franchise Agreement and Personal Guarantee)

77.     DDF incorporates here paragraphs 1 – 68 above.

78.     Hunar Wilkesboro has breached the Wilkesboro Franchise Agreement by failing to report gross sales at the Wilkesboro Store and pay DDF sums due thereunder, including interest, attorney's fees and costs incurred by DDF.

79.     Sundeep and Ajinder have breached their Personal Guarantee to DDF by failing to pay sums due by Hunar Wilkesboro under the Wilkesboro Franchise Agreement.

80.     Damages continue to accumulate as Hunar Wilkesboro continues to operate the Wilkesboro Store without payment to DDF.

### COUNT III (Hunar Wilkesboro, Sundeep and Ajinder)
#### (Breach of Wilkesboro Sublease and Guarantee)

81.     DD RE I incorporates here paragraphs 1 – 68 above.

82.     Hunar Wilkesboro has breached the Wilkesboro Sublease by failing to pay to DB RE I, when due, rent and other fees and charges due thereunder.

83.     Sundeep and Ajinder have breached their Guarantee by failing to pay DB RE I sums due by Hunar Wilkesboro under the Wilkesboro Sublease.

### COUNT IV (Hunar, Sundeep, Ajinder, Santosh, Manpreet and Navneet)
#### (Breach of Mocksville Franchise Agreement and Personal Guarantee)

84.     DDF incorporate here paragraphs 1 – 68 above.

85.     Hunar has breached the Mocksville Franchise Agreement by failing to report gross sales to DDF and by failing to pay DDF franchise fees, advertising fees, interest, attorney's fees and other charges due under the Mocksville Franchise Agreement.

19

86.     Sundeep, Ajinder, Santosh, Manpreet and Navneet have breach their Personal Guarantee by failing to pay DDF sums due but unpaid by Hunar under the Mocksville Franchise Agreement.

<u>COUNT V (Hunar Advance, Sundeep, Ajinder, Santosh, Manpreet and Navneet)</u>
(Breach of Clemmons Franchise Agreement and Personal Guarantee)

87.     DDF incorporates here paragraphs 1 – 68 above.

88.     Hunar Advance has breached the Clemmons Franchise Agreement by failing to report gross sales at the Clemmons Store and by failing to pay franchise fees, advertising fees, interest, attorney's fees and other fees and charges due under the Clemmons Franchise Agreement.

89.     Sundeep, Ajinder, Santosh, Manpreet and Navneet have breached their Personal Guarantee by failing to pay sums due by Hunar Advance under the Clemmons Franchise Agreement.

<u>COUNT VI (Hunar Foods, Sundeep, Ajinder, Santosh, Manpreet and Navneet)</u>
(Breach of Robinhood Road Franchise Agreement and Personal Guarantee)

90.     DDF incorporates here paragraphs 1 – 68 above.

91.     Hunar Foods has breached the Robinhood Road Franchise Agreement by failing to report gross sales at the Robinhood Road Store and by failing to pay franchise fees, advertising fees, interest, attorney's fees and other fees and charges due under the Robinhood Road Franchise Agreement.

92.     Sundeep, Ajinder, Santosh, Manpreet and Navneet have breached their Personal Guarantee by failing to pay sums due by Hunar Foods under the Robinhood Road Franchise Agreement.

20

<u>COUNSEL VII (Hunar Hawthorne, Sundeep and Ajinder)</u>
(Breach of Hawthorne Road  Franchise Agreement and Personal Guarantee)

93.     DDF incorporates here paragraphs 1 – 68 above.

94.     Hunar Hawthorne has breached the Hawthorne Road Franchise Agreement by failing to report gross sales at the Hawthorne Road Store and by failing to pay franchise fees, advertising fees, interest, attorney's fees and other fees and charges due under the Hawthorne Road Franchise Agreement.

95.     Sundeep and Ajinder have breached their Personal Guarantee by failing to pay DDF sums due by Hunar Hawthorne under the Hawthorne Road Franchise Agreement.

<u>COUNT VIII (Hunar Hawthorne, Sundeep and Ajinder)</u>
(Breach of Hawthorne Road Sublease and Guarantee)

96.     DD IP II incorporates here paragraphs 1 – 68 above.

97.     Hunar Hawthorne has breached the Hawthorne Road Sublease by failing to pay DB RE II, when due, rent, real estate taxes, interest and attorney's fees due under the Hawthorne Road Sublease.

98.     Sundeep and Ajinder breached their personal Guarantee by failing to pay DB RE II sums due but unpaid by Hunar Hawthorne under the Hawthorne Road Sublease.

WHEREFORE, Plaintiffs request the following relief against Defendants:

(a)     the entry of preliminary and permanent injunctions against each of the defendants, as well as their agents, servants and employees, prohibiting them from directly, indirectly or in any manner whatsoever, using, infringing or diluting the Dunkin' Donuts Marks and requiring each of them to cease operation of their respective stores immediately and de-identify each of the store premises (in favor of DDF and DD IP); and

(b)     the entry of judgment in favor of DDF against each applicable Defendant, in such amounts as are proved to be owing for breach of the respective Franchise Agreements and Subleases, plus pre-judgment and post-judgment interest;

(c)     the award of treble damages against each Defendant for their willful infringement of the Dunkin' Donuts Marks at the respective stores;

(d)     immediate possession of the Wilkesboro Store and Hawthorne Road Store premises (DD RE I and DD RE II, respectively);

(e)     the award of all reasonable costs and attorney's fees incurred by Plaintiffs because of the unlawful acts of the Defendants; and

(f)     such other and further relief as may be appropriate.

DUNKIN' DONUTS FRANCHISING, LLC,
DD IP HOLDER, LLC,
DB REAL ESTATE ASSETS I, LLC and
DB REAL ESTATE ASSETS II, LLC


By ___/s/ Sandy T. Tucker_____
        Sandy T. Tucker (NC Bar 20735)
        WILLIAMS MULLEN
        200 S. 10th Street (23219)
        Post Office Box 1320
        Richmond, VA  23218-1320
        (804) 420-6418
        (804) 420-6507 (fax)
        stucker@williamsmullen.com

27951160_1.docx

22